UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | |
|---|---|
| Susan Presley, ) | Civil Action No. 9:18-1945-BHH |
| ) | |
| Plaintiff, ) | |
| vs. ) | |
| ) | **OPINION AND ORDER** |
| Beaufort County School District, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

This matter is before the Court for review of the Report and Recommendation entered by United States Magistrate Judge Kaymani D. West on July 9, 2020 ("Report"). (ECF No. 57.) In accordance with 28 U.S.C. § 636(b)(1)(B) and Local Rule 73.02(B)(2) for the District of South Carolina, this case was referred to Magistrate Judge West for pretrial handling. In her Report, the Magistrate Judge recommends that Defendant Beaufort County School District's ("Defendant" or "School District") motion for summary judgment be granted in part and denied in part. (*See id.*) The Report sets forth in detail the relevant facts and standards of law, and the Court incorporates them here without recitation.[1]

## BACKGROUND

The Magistrate Judge entered her Report on July 9, 2020, recommending that Defendant's motion for summary judgment be denied as to Plaintiff Susan Presley's ("Plaintiff") claims of race-based and age-based discrimination, and granted as to her

---

[1] As always, the Court says only what is necessary to address Defendant's objections against the already meaningful backdrop of a thorough Report and Recommendation by the Magistrate Judge; exhaustive recitation of law and fact exists there.

1

claim of slander *per se*. (ECF No. 57 at 33.) On July 23, 2020, Plaintiff filed objections challenging the portion of the Report that recommends the Court dismiss her slander claim. (ECF No. 59.) Defendant filed objections on the same day, challenging the portions of the Report that recommend the Court deny summary judgment as to Plaintiff's race-based and age-based discrimination claims. (ECF No. 60.) On August 6, 2020, each party filed a reply to the other party's objections. (ECF No. 61 & 62.) The matter is ripe for consideration and the Court now makes the following ruling.

## STANDARD OF REVIEW

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *See Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). The Court is charged with making a *de novo* determination of any portion of the Report of the Magistrate Judge to which a specific objection is made. The Court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or recommit the matter to the Magistrate Judge with instructions. *See* 28 U.S.C. § 636(b). In the absence of a timely filed objection, a district court need not conduct a *de novo* review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005).

## DISCUSSION

The Court will address the parties' objections in turn as they apply to the three categories of Plaintiff's claims: (1) slander *per se*, (2) race discrimination, and (3) age discrimination.

### A. Slander *Per Se*

In her fourth cause of action, Plaintiff alleges that Defendant published false and defamatory statements about her to employees of the School District and others in the community without a need to know. (Compl. ¶ 71, ECF No. 1.) She asserts "[D]efendant suspended, disciplined, terminated and constructively discharged [P]laintiff after conducting an open, widespread investigation into theft which involved law enforcement officers repeatedly visiting the premises and questioning witnesses." (*Id.*) Plaintiff further contends, "By suspending and terminating [P]laintiff, [D]efendant forced [P]laintiff to leave the work premises in the midst of said public investigation, giving other employees and persons in the community the belief and understanding that [P]laintiff committed the crime of theft and embezzlement and that she could not competently perform her job." (*Id.*)

After correctly stating the applicable law and analyzing the facts presented, Magistrate Judge West concluded that, construing all inferences in Plaintiff's favor, Plaintiff created an issue of fact as to whether a defamatory statement could be insinuated from Defendant's successive actions of suspending her employment, calling law enforcement to report theft, having a uniformed officer visit the school and interview individuals (including the office manager), and forcing Plaintiff to resign and retire without ever returning to work. (*See* ECF No. 57 at 30–32.) However, the Magistrate Judge further found that Defendant is entitled to summary judgment on the slander claim based on qualified privilege and Plaintiff's failure to show that Defendant acted "recklessly or wantonly." (*See id.* at 32–33.)

Plaintiff objects to the later conclusion, arguing that Magistrate Judge West misunderstood or misstated her slander claim and erroneously found that the publication(s) in question enjoyed a qualified privilege, thereby requiring Plaintiff to prove

3

actual malice to break the privilege and avoid summary judgment. (*See* ECF No. 59 at 1–2.) Plaintiff contends that her claim does not rely on a publication by a school employee to law enforcement or to a supervisory employee conducting an investigation, nor does the claim rely on statements made by any person in the course of the investigation. (*See id.* at 2.) Rather, asserts Plaintiff:

> [T]he publications were made by the conduct and actions of high-level, decision-making administrative employees, like Superintendent Jeffrey Moss ("Moss") and the Chief Administrative and Human Resource Officer, Alice Walton ("Walton"), when on December 19, 2016, they suspended both Presley and Christy McCullough ("McCullough"), the school's Athletic Director ("AD") and Science teacher at the same time. Both Presley and McCullough worked at the same middle school, Robert Smalls Academy. Moss and Walton's actions continued when, later that same day, in the afternoon of December 19, 2016, they called the Beaufort County Sheriff's Department ("Sheriff" or "Sheriff's Department") and reported missing or stolen money from the school. That day, at least two (2) uniformed police officers showed up at the school to respond to the call. The next day, December 20, 2016, more uniformed deputies or officers came to the school to investigate and question witnesses. . . . Thereafter, the Sheriff's Department conducted a wide-spread, well-known and public investigation into the missing funds, even though it was clear McCullough was responsible for the unaccounted-for money. To this point, McCullough was listed as a suspect in the Sheriff's incident report, while Presley and all other witnesses were only listed as witnesses. The investigation (which began on December 19, 2016) involved law enforcement officers visiting the school on several different occasions to interview school employees who were also witnesses. When law enforcement officers came to the school they did so in full uniform, with guns and badges. When they questioned the employees/witnesses like the Principal, Ebonique Holloman, the Office Manager, Patsy Bishop, and others, they did so in front of people at the school who were not involved in the investigation in any way – persons walking by or standing around who observed the interaction between the Sheriff's uniformed officers and defendant's employees. After all, Bishop testified that there were employees and people around who observed the fully uniformed Sheriff's officers or deputies question her and take her statement in the course of the investigation. The investigation ended on or about January 27, 2017.

(*Id.* at 2–3 (internal citations omitted).) Plaintiff avers that in February 2017, when she and McCullough were disciplined, she was punished more harshly than McCullough and

4

that the harsh punishment effectively forced her to resign, retire, and not return to work in March 2017. (*Id.* at 3.) Plaintiff does not identify any actual individuals to whom the relevant publications were made. However, she asserts that no privileges apply because the publications were made "well after the investigation by law enforcement ended," "not made to well-placed people with some need to know or some mutual interest in the subject mater of the publication," and instead "were made to anyone who realized there was an investigation by law enforcement into missing funds or into some wrongdoing at the school and who realized that, on the heels of that investigation, Presley did not return to work, but McCullough did; and who surmised or believed from those circumstances that [P]laintiff did not return to work because she stole money, broke the law, or engaged in wrongdoing, illegal conduct and/or was fired for same." (*Id.* at 5–6.)

The Court agrees with the sound analysis and reasoning of the Magistrate Judge, and Plaintiff's objection regarding the slander claim is overruled. First, Plaintiff never raised any opposition or challenge to Defendant's assertion of qualified privilege prior to the issuance of the Report. Magistrate Judge West stated: "Plaintiff has not responded to Defendant's arguments that it is entitled to summary judgment based on privilege or, alternatively, based on sovereign immunity[,]" and "[t]he court will not create arguments for Plaintiff." (ECF No. 57 at 33.) As such, Plaintiff's challenge to the qualified privilege defense for the first time in her objections is untimely. Courts in this District have often repeated the maxim that a district court need not decide an issue that a litigant waives by failing to first raise it before the Magistrate Judge. For example, in *ContraVest Inc. v. Mt. Hawley Ins. Co.*, 273 F. Supp. 3d 607 (D.S.C. 2017), Judge Norton stated:

> "A magistrate's decision should not be disturbed on the basis of arguments not presented to him." *Keitt v. Ormond*, 2008 WL 4964770, at *1 (S.D.W.

5

> Va. Nov. 13, 2008) (quoting *Jesselson v. Outlet Associates of Williamsburg, Ltd. P'ship*, 784 F. Supp. 1223, 1228 (E.D. Va. 1991)). "[T]he purpose of the Magistrates Act is to allow magistrates to assume some of the burden imposed on the district courts and to relieve courts of unnecessary work." *Id.* at *2 (quoting *Jesselson*, 784 F. Supp. at 1228–29). "Allowing parties . . . to raise new issues or arguments at any point in the life of a case would" frustrate this purpose and "result in a needless complication of litigation." *Id.* Instead, "[p]arties should fully plead their claims, and fully advance their arguments, at all stages of litigation, unless they are prepared to waive them." *Id.* Thus, "[t]he [c]ourt is not obligated to consider new arguments raised by a party for the first time in objections to the [m]agistrate's [r]eport." *Dune v. G4s Regulated Sec. Sols., Inc.*, No. 0:13-cv-01676, 2015 WL 799523, at *2 (D.S.C. Feb. 25, 2015). While the court has the power to address such arguments, that power lies within the court's sound discretion. *Id.*

273 F. Supp. 3d at 620. Second, Plaintiff has not provided any authority for her premise that a qualified privilege would not attach to publication by conduct and action (*see* ECF No. 59 at 5). Third, Plaintiff has provided no evidence that anything negative about her—even the inferred defamatory statement recognized by Magistrate Judge West—was published to a third party. Suffice it to say, Plaintiff's objection does not reveal any error in the Magistrate Judge's reasoning and conclusions. It is overruled.

**B. Race Discrimination**

In her first and second causes of action, Plaintiff alleges that Defendant violated Title VII and 42 U.S.C. § 1981 by disparately disciplining her and, ultimately, constructively discharging her based on her race, which is Caucasian. (*See* Compl. ¶¶ 39–58.) The Magistrate Judge correctly noted that the same analysis applies to Title VII and § 1981 claims, stated the law applicable to discriminatory discipline/discharge claims (including a discussion of whether allegations of "reverse discrimination" require a higher *prima facie* burden on plaintiffs), analyzed the facts presented, and concluded that Plaintiff: (1) satisfied the elements of a *prima facie* case of race discrimination, and (2)

6

presented sufficient evidence from which a reasonable juror could find Defendant's actions pretextual. (*See* ECF No. 57 at 15–28.) Magistrate Judge West stated:

> Although recommending that summary judgment be denied as to Plaintiff's race-discrimination claim, the undersigned notes there is significant evidence that could persuade a trier of fact to find Defendant's handling of the situation with Plaintiff ultimately was nondiscriminatory. Based on the facts before the court, however, the undersigned is of the opinion that a jury could find otherwise, making summary judgment inappropriate.

(*Id.* at 27–28.)

Defendant first objects that the Magistrate Judge erred by failing to apply a heightened standard to the first prong of the *prima facie* case analysis—namely, Plaintiff's claim that she is a member of a protected class—because this is a reverse race discrimination claim. (ECF No. 60 at 1–4.) Defendant argues that where a Caucasian plaintiff alleges race discrimination, the first element of the *prima facie* case becomes more onerous and the plaintiff must demonstrate circumstances supporting the suspicion that the defendant is among those unusual employers who discriminate against the majority. (*See id.* at 1–2 (citing *Youmans v. Manna, Inc.*, 33 F. Supp. 2d 462, 464 (D.S.C. 1998)).)

There is a circuit split on the issue of whether a heightened burden applies to satisfy the protected class element of a reverse race discrimination claim. The Second, Third, Fifth, and Eleventh Circuits do not apply any extra or heightened burden in such a case, but simply apply the burden shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *See McGuiness v. Lincoln Hall*, 263 F.3d 49, 53 (2nd Cir. 2001); *Iadimarco v. Runyon*, 190 F.3d 151, 160 (3rd Cir. 1999); *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 426 (5th Cir. 2000); *Bass v. Bd. of Cnty Comm'rs*, 256 F.3d 1095, 1103 (11th Cir. 2001) *overruled in part on other grounds by*

7

*Crawford v. Carroll*, 529 F.3d 961 (11th Cir. 2008). The Sixth, Seventh, Eighth, Tenth, and District of Columbia Circuits have held that a reverse discrimination plaintiff must both satisfy the *McDonnell Douglas prima facie* test and present evidence of background circumstances to support the suspicion that the defendant discriminates against majority groups. *See Leadbetter v. Gilley*, 385 F.3d 683, 690 (6th Cir. 2004); *Ineichen v. Ameritech*, 410 F.3d 956, 960 (7th Cir. 2005); *Hammer v. Ashcroft*, 383 F.3d 722, 724 (8th Cir. 2004); *Stover v. Martinez*, 382 F.3d 1064, 1076 (10th Cir. 2004); *Russell v. Principi*, 257 F.3d 815, 818 (D.C. Cir. 2001). However, the Sixth Circuit has questioned its own adoption of a heightened standard for reverse discrimination plaintiffs, stating, "We have serious misgivings about the soundness of a test which imposes a more onerous standard for plaintiffs who are white or male than for their non-white or female counterparts." *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 801 n.7 (6th Cir. 1994). Courts in this District have held both that the "background circumstances" requirement applies, *see Youmans*, 33 F. Supp. 2d at 464, and that it does not apply, *see Moore v. Rural Health Servs., Inc.*, No. CIV.A.1:04 376 RBH, 2007 WL 666796, at *9 n.9 (D.S.C. Feb. 27, 2007) ("For the reasons set forth by the District Court in [*Stock v. Universal Foods Corporation*, 817 F. Supp. 1300 (D. Md. 1993), *aff'd*, 16 F.3d 411 (4th Cir.1994), cert. denied, 115 S. Ct. 66 (1994)] at 1307, the undersigned has used the traditional *McDonnell Douglas* framework in analyzing the claims presented in this case."). In *Lucas v. Dole*, 835 F.2d 532 (4th Cir. 1987), the Fourth Circuit stated:

> The present case also involves "reverse discrimination;" a member of the white majority is alleging racial discrimination. The Supreme Court has held that Title VII protects whites as well as minorities. *McDonald v. Santa Fe Transp. Co.*, 427 U.S. 273, 96 S. Ct. 2574, 49 L.Ed.2d 493 (1975). Although the D.C. Circuit has imposed a higher prima facie burden on majority plaintiffs, we expressly decline to decide at this time whether a higher

8

burden applies.

*Id.* at 533–34 (footnotes omitted). The Fourth Circuit has never held that a heightened standard applies to the protected class element of a *prima facie* case in the context of a reverse discrimination claim. In the absence of controlling authority imposing the heightened standard, Magistrate Judge West applied the traditional *McDonnell Douglas* framework to Plaintiff's race discrimination causes of action. (*See* ECF No. 57 at 16.) Defendant has not shown any error in the Magistrate Judge's decision to apply the traditional standard to the *prima facie* case analysis and the objection is overruled.

Defendant next objects by arguing that Magistrate Judge West erred in concluding that Plaintiff presented sufficient evidence that could cause a reasonable juror to question whether she had failed to perform satisfactorily or meet Defendant's legitimate expectations. (ECF No. 60 at 4.) Defendant asserts the Magistrate Judge improperly relied on evidence of Plaintiff's previous above-average-to-excellent performance evaluations because Plaintiff must show satisfactory performance at the time of the adverse employment action, and the performance evaluations referenced were from a previous school year. (*Id.* at 5–6.)

The Court disagrees and finds that Magistrate Judge West did not err by considering Plaintiff's past performance evaluations through the spring of 2016 along with the fact that Plaintiff had never been disciplined during her employment with the School District (*see* ECF No. 57 at 17–18). At the time she was disciplined, Plaintiff had been a bookkeeper with the School District for fourteen (14) years. Plaintiff produced evidence to show that she received above-average ratings on her employment evaluations throughout that period. The last performance evaluation she submitted was dated April 8,

2016, eight (8) months before she was suspended. However, the Court notes that the subject matter of this case deals specifically with money-handling issues that occurred at the start of the 2016/2017 school year (September and October 2016). Thus, there is nothing improper about the Magistrate Judge considering Plaintiff's last available performance evaluations, which happen to have concluded at the end of the prior school year. As observed by Magistrate Judge West (*see id.* at 18), the Fourth Circuit has specifically noted the "danger that courts might apply the 'expectations' or 'qualification' element of the prima face too strictly in some cases, resulting in the premature dismissal of potentially meritorious claims of unlawful discrimination." *Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 516 (4th Cir. 2006) (citation omitted).  Beyond the performance evaluations, Plaintiff produced undisputed testimony that she had no supervisory authority over, or power to train, admonish, or discipline the colleague who withheld the athletic event money in the first instance (McCullough). (*See* ECF No. 57 at 18.) Thus, a reasonable jury could find that Defendant's expectations were not legitimate, for example, by concluding that Plaintiff had no responsibility to confront McCullough about money being missing or delayed. Viewing the evidence in the light most favorable to Plaintiff, the Court agrees with the conclusion drawn in the Report, that Plaintiff has raised a genuine issue of material fact as to whether she was performing up to Defendant's legitimate expectations. The objection is overruled.

Defendant further objects by arguing the Magistrate Judge erred in her analysis of the adverse employment action prong of the *prima facie* case. (*See* ECF No. 60 at 6–8.) Defendant asserts that the circumstances of Plaintiff's separation from employment with the School District cannot be treated legally as a constructive discharge. In support of this

assertion, Defendant contends that when Plaintiff was removed from the bookkeeper position and offered the best classified position that was then available, that of a teacher's aide, she was allowed to maintain her salary as a bookkeeper for the remainder of that school year and the next (through June 2018), and to apply for a different classified position when such a position opened. (*Id.* at 7.) Thus, Defendant argues, the Magistrate Judge was wrong to suggest that Plaintiff would be paid "only half of her bookkeeper's salary" in the new role and erroneously analyzed the "objective intolerability" of the teacher's aid position. (*Id.* at 7–8.)

> In the Report, Magistrate Judge West stated:
>
> The court notes that the planned discipline of stripping Plaintiff of her bookkeeper responsibilities and demoting her to a position with a greatly reduced salary, had they taken place, would certainly be considered adverse employment actions. An adverse employment action is an action "that 'constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 337 (4th Cir. 2011) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)).

(ECF No. 57 at 19.) A related footnote states:

> Defendant maintains Plaintiff would have remained at her bookkeeper's salary through the following school year (2017-2018) and has produced evidence to that effect. However, Plaintiff has testified that, at the time she made the decision not to accept the demotion she understood her salary would be diminished at the end of March 2017. Plaintiff's evidence is, of course, accepted as true for purposes of considering this motion.

(*Id.* at n.9.) The Court finds no error in the Magistrate Judge's analysis on this issue. It is uncontested that the salary associated with the teacher's aide position was approximately half what Plaintiff had been making as a bookkeeper. Chief Administrative and Human Resource Officer Walton testified that it was "usually standard procedure" for the School District, if moving an employee to a position of lesser pay, to hold the employee at their

11

initial salary for a year in order to give the employee an opportunity to find another position comparable to their salary. (Walton Dep. 166:25–167:8, ECF No. 39-5 at 23–24.) However, Walton stated that she could not recall if she told Plaintiff that Plaintiff would keep her bookkeeper salary for another year. (*Id.* 187:19–25, ECF No. 61-1 at 2.) Plaintiff maintains that she was not made aware that she would have kept her bookkeeper salary and points out that Defendant has not produced any letter, memo, correspondence, or meeting note to evidence that she was told as much. (*See* ECF No. 61 at 10–12.) Walton testified that the information would have been included in a letter to Plaintiff, "once we made the movement," but Plaintiff resigned before such a letter was generated so the offer to keep her salary for another year was not documented anywhere. (Walton Dep. 187:25–188:4, ECF No. 61-1 at 2–3.) There is a genuine dispute of material fact as to whether Plaintiff was informed that she would keep her bookkeeper's salary for an additional year. The Magistrate Judge committed no error by taking this into account and assuming Plaintiff's version of events to be true when evaluating the "objective intolerability" of the circumstance created by the adverse employment action at issue. The objection is overruled.

Defendant next objects by asserting that Plaintiff's position as a bookkeeper was ultimately filled, in July 2017, with another Caucasian woman, so Magistrate Judge West was wrong to conclude that Plaintiff satisfied the fourth prong of her *prima facie* case. (*See* ECF No. 60 at 8–9.) The fourth prong of a *prima facie* case under *McDonnell Douglas* requires a plaintiff to show "that other employees who were not members of [her] protected class were treated more favorably, that [she] was replaced (in the case of a discharge claim) by someone from outside of her protected class, or there is some other

evidence giving rise to an inference of unlawful discrimination." *Phillips v. Georgetown Cty.*, No. 2:16-CV-1612-PMD-MGB, 2018 WL 3119234, at *3 (D.S.C. Jan. 24, 2018), *report and recommendation adopted*, No. 2:16-CV-1612-PMD-MGB, 2018 WL 1324502 (D.S.C. Mar. 15, 2018) (citing *Coleman v. Maryland Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd sub nom. Coleman v. Court of Appeals of Maryland*, 566 U.S. 30 (2012)). In the Report, Magistrate Judge West stated:

> [A]ccepting all facts in the light most favorable to Plaintiff, and noting Plaintiff's light burden of establishing a prima facie case, the undersigned recommends finding Plaintiff has satisfied the fourth and final prong of her prima facie case of race discrimination by providing evidence that the bulk of her bookkeeping duties were reassigned to Blackman, an African-American female, for several months before the position was more permanently filled. *Cf.* [*Goode v. Cent. Va. Legal Aid Soc'y, Inc.*, 807 F.3d 619, 628 (4th Cir. 2015)] (noting plaintiff could plead prima facie case of age discrimination by showing employer distributed some of plaintiff's prior job duties to one outside plaintiff's class). The undersigned acknowledges this reassignment potentially is undercut by Defendant's later hiring someone within Plaintiff's protected class (Caucasian) for the bookkeeper job. Nonetheless, the prima facie burden is not an onerous one.

(ECF No. 57 at 21–22.) Defendant does not contest that Blackman fulfilled the bulk of Plaintiff's duties for four months before the School District hired a permanent replacement. The Court agrees with the Magistrate Judge that this enough to survive summary judgment on the "different treatment" prong of the *prima facie* case analysis, *see Coleman*, 626 F.3d at 190 (noting the fourth element of a *prima facie* case to be "different treatment from similarly situated employees outside the protected class"), and the objection is overruled.

With respect to comparator evidence, Defendant objects by arguing that Magistrate Judge West erred in concluding that McCullough was an appropriate comparator. (*See* ECF No. 60 at 9–12.) Defendant asserts there were differentiating and

13

mitigating circumstances as between Plaintiff and McCullough because McCullough failed to follow policies and protocols that were apparently new to her as a newly minted Athletic Director and on which she claimed not to have been trained, while Plaintiff failed to timely recognize and report the breach of financial protocols after having been trained on those protocols and knowledgeable about them for many years. (*Id.* at 10.) Defendant contends that because one employee was certified (McCullough) and one employee was classified (Plaintiff), it was not feasible—particularly in the middle of a school year—for Superintendent Moss to impose the *exact* same discipline, which supports a conclusion that the employees are not appropriate comparators. (*See id.* at 11–12.)

The Magistrate Judge drew a measured conclusion on the comparator evidence, rejecting Plaintiff's expansive view that Principal Holloman and District Accounting Specialist Blackman were similarly situated, but agreeing with Plaintiff that she presented sufficient evidence to create an issue of fact as to whether Defendant treated Plaintiff and McCullough differently regarding the situation with the athletic event ticket money. (*See* ECF No. 57 at 23–24.) As Magistrate Judge West noted in the Report, the Fourth Circuit has stated:

> [A] comparison between similar employees "will never involve precisely the same set of work-related offenses occurring over the same period of time and under the same sets of circumstances." *Cook v. CSX Transp. Corp.*, 988 F.2d 507, 511 (4th Cir. 1993). Rather, to establish a valid comparator, the plaintiff must produce evidence that the plaintiff and comparator "dealt with the same supervisor, [were] subject to the same standards and . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010) (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)) (alterations in original).

*Haynes v. Waste Connections, Inc.*, 922 F.3d 219, 223–24 (4th Cir. 2019) (some

14

alterations in original). "The similarly-situated analysis calls for a flexible, common-sense examination of all relevant factors." *Coleman v. Donahoe*, 667 F.3d 835, 846 (7th Cir. 2012) (citation and quotation marks omitted). The Court finds no error in the Magistrate Judge's treatment of Plaintiff and McCullough as comparators. Plaintiff and McCullough had the same supervisory reporting structure (first to Principal Holloman and then to Superintendent Moss), were subject to the same work rules, and are alleged to have engaged in similar conduct with respect to the athletic event money. Although the discipline imposed appeared similar on the surface, the affect was that McCullough lost only a small portion of her compensation (Athletic Director stipend of $1,627), whereas Plaintiff—according to her evidence—stood to lose half of her annual salary of $37,000, and to have to perform a new job of far less prestige at a different location. Thus, the objection is overruled.

With regard to the pretext analysis, Defendant objects by arguing that Magistrate Judge West erred in concluding that Plaintiff submitted sufficient evidence from which a reasonable juror could find Defendant's actions pretextual. (ECF No. 60 at 13.) Defendant asserts that, pursuant to *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000), Plaintiff has a burden to demonstrate the *falsity* of the legitimate, nondiscriminatory reasons given by the School District for its actions and she has not met that burden of proof. (*Id.*) Defendant highlights the fact that the Magistrate Judge described the pretext issue as "a close call" and stated "there is significant evidence that could persuade a trier of fact to find Defendant's handling of the situation with Plaintiff ultimately nondiscriminatory." (*See* ECF No. 57 at 27.) Defendant argues, "no factfinder could reasonably conclude that an employer would have no basis to find fault in and

15

discipline the bookkeeper either for not recognizing that she had received no ticket sales for two months or for recognizing that and not reporting it to the [school] principal so that corrective action could be taken." (ECF No. 60 at 14.)

Defendant's interpretation of the standard applicable to establish pretext sufficient to survive summary judgment is too narrow. In *Reeves*, the U.S. Supreme Court stated, "[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification *is false*, may permit the trier of fact to conclude that the employer unlawfully discriminated." 530 U.S. at 148 (emphasis added). The *Reeves* court also stated, "the plaintiff may attempt to establish that [she] was the victim of intentional discrimination 'by showing that the employer's proffered explanation is *unworthy of credence*.'" *Id.* at 143 (quoting *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 256 (1981)) (emphasis added). Defendant's proffered reason for its actions in removing Plaintiff from her position handling money is that Plaintiff did not catch McCullough's failure to turn in athletic event money and report it "in a timely manner." (*See* ECF No. 39-1 at 5, 14–15.) It is undisputed that Plaintiff was ultimately the one who reported McCullough's alleged misconduct with the money. As evidence of pretext, Plaintiff points to the fact that she did not engage in any affirmative misconduct; that she was not McCullough's supervisor and had no authority to discipline McCullough or others; that it was not her job to go and ask the Athletic Director for deposits; that it was the Athletic Director's job to collect the money in question, count it, prepare a ticket seller report, and deliver those items to the bookkeeper, as well as to turn over all invoices from athletic events to the bookkeeper; that she did not break any specific "work rule" by failing to catch the missing money and invoices earlier; and that McCullough was more culpable

and received less discipline. (*See* ECF No. 46 at 23.) Under the circumstances, the Court agrees with the Magistrate Judge that this evidence is sufficient for a reasonable juror to find Defendant's proffered reason for removing Plaintiff from her position "unworthy of credence," and the objection is overruled.

In summary, the Court finds that the Magistrate Judge committed no error in her analysis of Plaintiff's race discrimination claims. Instead, Magistrate Judge West carefully weighed the evidence in light of the permissive standards applicable at the summary judgment stage, found that valid jury questions remain, and determined that "the evidence is [not] so lopsided that the employer is entitled to judgment as a matter of law." *Bright v. Hill's Pet Nutrition, Inc.*, 510 F.3d 766, 770 (7th Cir. 2007).

### C. Age Discrimination

In her third cause of action, Plaintiff alleges that Defendant violated the Age Discrimination in Employment Act ("ADEA") by disciplining her differently than a substantially younger employee who engaged in the same or similar alleged conduct, and by constructively discharging Plaintiff but not the younger employee. (*See* Compl. ¶¶ 59–69.) The Magistrate Judge correctly stated the elements of a *prima facie* case of age discrimination under the *McDonnell Douglas* framework and concluded that Plaintiff: (1) satisfied the elements of a *prima facie* case of age discrimination, and (2) presented sufficient evidence from which a reasonable juror could find Defendant's actions pretextual. (*See* ECF No. 57 at 28–30.) Noting the stricter "but-for" causation standard applicable to ADEA claims when considering whether Plaintiff has shown pretext, Magistrate Judge West stated:

> For many of the same reasons set out in connection with the Title VII/§ 1981 claim, the undersigned is of the opinion that Plaintiff has set out evidence

> from which a reasonable juror could find that her age of 67 was a but-for cause of the disproportionate, uneven discipline that led to Plaintiff's termination. A substantially younger individual undertook some of her duties for months and then an even-younger individual replaced her in July 2017. Further, Plaintiff's significantly younger comparator, McCullough, was subjected to far-less serious discipline for her arguably far-more serious malfeasance. Summary judgment should be denied as to Plaintiff's claim of discrimination in violation of the ADEA.

(*Id.* at 30.)

Defendant argues that the Magistrate Judge erred in her application of the but-for causation requirement. (ECF No. 60 at 16.) Defendant notes that, in order to prevail on her claim, Plaintiff must show the School District would not have taken the employment action in the absence of age discrimination, and argues the pretext evidence as discussed in the race discrimination section of the Report is not sufficient under this standard. (*Id.* at 17.)

In *Reeves*, the Supreme Court stated, "Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive." 530 U.S. at 147 (citation omitted). "In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose." *Id.* The Court has already explained that a genuine issue of fact remains as to whether Defendant's proffered reason for removing Plaintiff from her position handling money is the real reason why she was removed. If the jury were to conclude the proffered reason is untruthful, it might then permissibly infer that the School District was "dissembling to cover up the discriminatory purpose" of removing Plaintiff from her position due to her age. This is, of course, not to say that Plaintiff has already established but-for causation on her age discrimination claim, or that Plaintiff could simultaneously

prevail on both her age discrimination and race discrimination claims. However, the Court agrees with the Magistrate Judge that the state of the evidence makes summary judgment inappropriate on Plaintiff's age discrimination claim. Accordingly, the objection is overruled.

## CONCLUSION

After careful consideration of the relevant materials and law, and for the reasons set forth above, the Court ADOPTS the Report (ECF No. 57) of the Magistrate Judge and incorporates it herein. Accordingly, Plaintiff Susan Presley's objections and Defendant Beaufort County School District's objections are OVERRULED. The motion for summary judgment (ECF No. 39) is GRANTED as to Plaintiff's claim of slander *per se* and DENIED as to her claims of race discrimination and age discrimination.

**IT IS SO ORDERED.**

/s/ Bruce Howe Hendricks
United States District Judge

March 2, 2021
Charleston, South Carolina